

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WARNER & SONS, INC., ) | |
| ) | |
| Plaintiff/Counter-defendant, ) | |
| ) | No. 09 C 1406 |
| v. ) | |
| ) | Honorable Charles R. Norgle |
| CENTRAL STATES, SOUTHEAST AND ) | |
| SOUTHWEST AREAS PENSION FUND, ) | |
| ) | |
| Defendant/Counter-plaintiff. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant/Counter-plaintiff Central States, Southeast and Southwest Areas Pension Fund's (the "Pension Fund") motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

### A. Facts

The Pension Fund is a multiemployer pension plan and employee benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff/Counter-defendant Warner & Sons, Inc. ("Warner") was an excavation and demolition company that ceased business operations in 2006. Among other activities, Warner engaged in the removal of buildings and the preparation of construction sites for new construction. From 1980 to 2006, Warner was required to make contributions to the Pension Fund on behalf of certain of its employees pursuant to various collective bargaining agreements ("CBAs") Warner executed with Local Union No. 364 of the International Brotherhood of Teamsters.

---

[1] Unless otherwise attributed, the Court takes all facts presented in this Opinion from the parties' Local Rule 56.1(a)(3) and 56.1(b)(3) Statements and Responses and notes the disputed facts within.

Although Warner employed truck drivers, site supervisors, operating engineers and laborers, the CBAs at issue only covered Warner's truck driver employees. According to the Pension Fund, the truck drivers' primary job responsibility involved the hauling of materials using a semi or a dump truck. Warner, providing somewhat more detail, asserts that the primary responsibility of the truck drivers "was to move demolition debris from the demolition site to Warner's landfill, collect fill material from the Warner landfill . . ., and move dirt fill around the site in connection with excavating the site preparation." Warner LR 56.1(a)(3) Resp., ¶ 22.

Both parties agree that part of a Warner's truck driver's daily work activity involved (1) ensuring that his or her truck was safely loaded with material at the construction site; (2) driving the fully loaded truck to either the Warner landfill or a recycling center to dump the load; (3) reloading the truck with backfill or dirt; and (4) unloading the backfill or dirt at the construction site. A round trip between the construction site and the landfill or the recycling center would take between one to two hours. Loading and unloading the truck with backfill and dirt would take between five and twenty minutes.

Occasionally Warner's truck drivers were asked to perform labor work by union seniority. Warner maintained records that documented how much time each worker spent performing truck driving responsibilities and labor responsibilities, but these records were destroyed at some point. Based on the deposition testimony of the eleven drivers for whom Warner submitted contributions to the Pension Fund from 1996 to 2006, four estimated that they spent as much as 90 percent or more of their work time "off-site"; five estimated that they spent between 70 to 85 percent of their work time "off-site"; and two estimated that they spent 60 percent or less of their work time "off-site."

**B. Procedural History**

### 1. Warner's Arbitration Action

In May 2007, the Pension Fund issued Warner a notice and demand for payment of withdrawal liability in the amount of $387,500.16, claiming that as of December 15, 2006 Warner had effected a "complete withdrawal" under Section 4203 of ERISA, 29 U.S.C. § 1383. Warner then requested a review of the Pension Fund's finding of withdrawal liability, which the Pension Fund denied on September 14, 2007.

As a result, in October 2007, Warner initiated arbitration (the "Arbitration") pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1), claiming that Warner was statutorily entitled to an exemption from withdrawal liability under ERISA. On February 6, 2009, after the parties submitted cross-requests for summary judgment, the arbitrator entered judgment in favor of the Pension Fund in the amount of $387,500.16, finding that Warner did not fall under ERISA's building and construction exemption.

### 2. The Pension Fund's Claim for Interim Withdrawal Payments

On August 23, 2007, while the Arbitration was ongoing, the Pension Fund brought an ERISA claim against Warner in the Northern District of Illinois seeking interim withdrawal liability payments. On September 9, 2009, Judge Dow granted the Pension Fund's motion for summary judgment and ordered Warner to make interim payments to the Pension Fund, holding that "the Pension Fund's argument – that driving to, from, and around construction sites does not constitute work in the building and construction industry – [is], at a minimum, plausible." Cent. States, Se. & Sw. Areas Pension Fund v. Warner & Sons, Inc., No. 07-CV-4772, 2008 WL 4201014, at *4 (N.D. Ill. Sept. 9, 2008). Judge Dow rejected Warner's reliance on In re Carl E. Smith, Inc., No. 03-22274, 2006 Bankr. LEXIS 4398 (Bankr. S.D. W.Va. April 10, 2006), a case that has been vacated in its entirety, and instead relied on Union Asphalts & Roadoils, Inc. v.

MO-KAN Teamsters Pension Fund, 857 F.2d 1230 (8th Cir. 1988) and Cent. States, Se. & Sw. Areas Pension Fund v. Waterland Trucking Serv., Inc., No. 06 C 4455, 2006 WL 4094350 (N.D. Ill. Dec. 22, 2006) ("Waterland Trucking II"), to conclude that "[t]he Pension Fund has met its burden of demonstrating that it has at least a colorable claim that Defendant is not exempt from withdrawal liability." Warner & Sons, 2008 WL 4201014, at *4.

### C. The Present Action

On March 5, 2009, Warner filed a complaint against the Pension Fund in this Court, seeking to vacate the arbitration award that had been entered in the Pension Fund's favor on February 6, 2009. On March 31, 2009, the Pension Fund filed a counter-claim against Warner pursuant to ERISA, asking this Court to enforce the February 6, 2009 arbitration award (the "Award"). On May 4, 2009, the Pension Fund filed a motion for summary judgment seeking to enforce the Award. The Motion is now fully briefed and before the Court.

## II. DISCUSSION

### A. Standard

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show that a genuine triable issue of material fact exists. See Szymanski v. Rite-Way Lawn Maint. Co., 231 F.3d 360, 364 (7th Cir. 2000).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record

and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See AA Sales & Assocs., Inc. v. Coni-Seal, Inc., 550 F.3d 605, 609 (7th Cir. 2008). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The inferences construed in the nonmoving party's favor, however, must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)).

**B. Analysis**

### 1. Standard of Review of the Arbitrator's Decision

The Pension Fund seeks to enforce the arbitrator's determination that Warner is not exempt from withdrawal liability under 29 U.S.C. § 1383(b)'s building and construction exception. Whether a party has satisfied the statutory standard for an exemption is a mixed question of law and fact. Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Louis Zahn Drug Co., 890 F.2d 1405, 1409 (7th Cir. 1989). Accordingly, the Court must employ the clearly erroneous standard when reviewing the arbitrator's decision. See id. at 1411 ("[W]e shall review the arbitrator's resolution of mixed questions under the clearly erroneous standard."); see also Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc., 223 F.3d 483, 488-89 (7th Cir. 2000) ("A finding is clearly erroneous if the reviewing court,

5

after acknowledging that the factfinder below was closer to the relevant evidence, is firmly convinced that the factfinder erred.").

## 2. Withdrawal Liability and the Building and Construction Exemption

Under ERISA and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), "an employer withdrawing from a multiemployer pension plan is liable for its share of unfunded vested benefits." Waterland Trucking II, 2006 WL 4094350, at *2 (citing 29 U.S.C. § 1381). An employer is exempt from withdrawal liability, however, if "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and . . . the plan . . . primarily covers employees in the building and construction industry . . . ." 29 U.S.C. § 1383(b).

Although neither ERISA nor the MPPAA define the term "substantially all," the Seventh Circuit has defined the term as "85% or more." Cent. States, Se. & Sw. Areas Pension Fund v. Robinson Cartage Co., 55 F.3d 1318, 1321 (7th Cir. 1995). The statutes also fail to define the term "building and construction industry." Importantly though, "[t]he term has been construed narrowly because, as used in Section 1383(b), it is part of a statutory exception." Warner & Sons, 2008 WL 4201014, at *3 (citing Union Asphalts, 857 F.2d at 1234). Accordingly, "employers who manufacture construction materials that are installed by others at the construction site are not in the building and construction industry." Union Asphalts, 857 F.2d at 1234; Cent. States, Se. & Sw. Areas Pension Fund v. Waterland Trucking Serv., Inc., 375 F. Supp. 2d 684, 686 (N.D. Ill. 2005) ("Waterland Trucking I") (holding with respect to 29 U.S.C. § 1383(b) that "[i]t is clear that drivers who merely deliver materials to a construction site are not engaged in the 'construction industry' for all purposes"); see also Or.-Wash. Carpenters-Employers Pension Trust Fund v. BQC Constr., Inc. Hardware Serv., 485 F. Supp. 2d 1206,

6

1215 (D. Ore. 2006) ("It is the *employees* for whom the employer *has an obligation to contribute* who must substantially all perform work in the building and construction industry.").

Thus, in Union Asphalts, the 8th Circuit held that an employer did not qualify for § 1383(b)'s building and construction exemption where its employees (1) "transported [road materials] from the refinery to the buyer's specified point of delivery, usually the job site"; (2) "discharged the road materials from their trucks to another tank or receiving vessel [at the job site]"; then (3) "returned to the refinery, reloaded, and drove to the next delivery point, whether a job site or storage area." 857 F.2d at 1235. The Union Asphalts court explained that § 1383(b) and the MPPAA "require that work be in the building and construction industry, not just connected to that industry." Id. at 1235; see also Waterland Trucking II, 2006 WL 4094350, at *3 ("The pension fund's argument that transportation of materials to and from or within construction sites does not constitute work in the building and construction industry is supported by case law."); Warner & Sons, 2008 WL 4201014, at *3 ("Warner and Sons may generally be a building and construction industry employer, yet still fail to qualify for the exemption because the covered employees are not performing work on-site.").

### 3. The Arbitrator's Decision

In the present case, Warner does not contend that any of the arbitrator's factual determinations were erroneous. See Warner Resp. at 4 ("Here the facts are undisputed. The only question is whether, in light of those undisputed facts, the statutory exemption to withdrawal liability applies."). Rather, Warner asserts that the arbitrator applied an overly narrow reading of § 1383(b) to those undisputed facts. The Court disagrees and finds the arbitrator's interpretation of § 1383(b) well-supported by existing case law.

The Court first notes that the arbitrator made several important factual findings regarding Warner's truck driver's daily activities. The arbitrator found that Warner's truck drivers "spent most of their time driving their dump trucks, loading, and unloading." Arbitration Op. at 4, and that "[t]he average percentage of time spent on work sites, for all of the drivers who testified, [was] 18.7%." Id. at 5. The arbitrator went on to state that "[g]iven the way the drivers described their work, the vast majority of this time would have been spent on loading and unloading." Id.

Based on these facts, the arbitrator concluded that "Warner failed to prove their on-site non-hauling work was more than minimal" and found that "none of [Warner's] truck drivers performed work in the building and construction industry." Arbitration Op. at 11. In support of his decision, the arbitrator relied on Union Asphalts, 857 F.2d 1230 and Waterland Trucking II, 2006 WL 4094350 because in both those cases the court held that the transportation of materials to and from a construction site did not constitute work in the building and construction industry. See id. at 9-10.

Warner contends that the arbitrator's reliance on Union Asphalts and Waterland Trucking II constitutes error. According to Warner, the outcome in the present case should be controlled by In re Carl E. Smith, Inc., 2006 Bankr. LEXIS 4398. See Warner Resp. at 13 (asserting that the Smith "is the most factually analogous decision available" and that "its reasoning warrants great weight"). In Smith, the Southern District of West Virginia Bankruptcy Court held that an employer qualified for § 1383(b)'s building and construction exemption even though the covered employees "were merely hauling materials to the construction site." Id. at *8 (internal quotations omitted). In reaching this conclusion, the Smith court declined to follow Union Asphalts and Waterland Trucking I because the employers in those cases engaged, at least in part, in business

8

outside of the construction industry; whereas, in Smith, the employer's "only business was in the building and construction industry." Id. The court stated that § 1383(b) "does not focus on whether the individual employees perform tasks which are limited to actual building or construction", id. at 9, and therefore held that the covered employees need not "actually construct or build" in order for the employer to qualify for the § 1383(b) exemption. Id.

In both the Arbitration and the previous Warner & Sons litigation, Warner also suggested that Smith should control the outcome of this matter. See Arbitration Op. at 8 (stating that Warner "relies" on Smith for its argument that Warner qualifies for the building and construction industry exemption); see also Warner & Sons, 2008 WL 4201014, at *4 (stating that Warner discussed Smith "in detail" in its briefs). As the arbitrator and the Warner & Sons court each correctly noted, however, the Smith opinion was vacated in its entirety. See In re Carl E. Smith, Inc., No. 03-22274, 2006 WL 4515309, at *1 (Bankr. S.D. W.Va. July 3, 2006). Moreover, there are several cases - both inside and outside the Northern District of Illinois - that explicitly reject the rule set forth in Smith. See, e.g., Warner & Sons, 2008 WL 4201014, at *4 (holding that it is the employees for whom the employer has an obligation to contribute that must perform work in the building and construction industry in order for the employer to qualify for the § 1383(b) exemption); see also Or.-Wash. Carpenters, 485 F.Supp.2d at 1215 (same). Therefore, at best, Smith suggests that arguably a minority of courts have adopted a more expansive reading of § 1383(b)'s building and construction exemption. See Warner & Sons, 2008 WL 4201014, at *4 (reviewing § 1383(b) case law and relying on Union Asphalts and Waterland Trucking II, instead of Smith, to reach the conclusion that the Pension Fund "has at least a colorable claim that [Warner] is not exempt from withdrawal liability"). Warner cites no authority though that would suggest that the rule set forth in Smith has been accepted as the definitive interpretation of §

9

1383(b). Thus, given the current state of § 1383(b) case law, there is no question that the arbitrator's decision to apply the law set forth in <u>Union Asphalts</u> and <u>Waterland Trucking II</u> to the facts of this case, as opposed to the law set forth in a vacated bankruptcy court opinion, is not clearly erroneous.

## III. CONCLUSION

For the foregoing reasons, the Pension Fund's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: December 29, 2009